**Christopher BARBOUR, Petitioner,**

v.

**Michael HALEY, Commissioner, Alabama Department of Corrections, Respondent.**

**No. CIVA 01–T–0612–N.**

United States District Court, M.D. Alabama, Northern Division.

May 23, 2001.

Order Denying Reconsideration, May 23, 2001.

George H. Kendall, Miriam Gohara, NAACP Legal Defense Fund, New York, NY, for Christopher Barbour, plaintiffs.

J. Clayton Crenshaw, A. Vernon Barnett, IV, David R. Clark, Office of the Attorney General, Alabama State House, Montgomery, for Charlie E. Jones, Warden, William H. Pryor, Jr., The Attorney General of the State of Alabama, Michael Haley, Commissioner Alabama Department of Corrections, defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Petitioner Christopher Barbour has been convicted of capital murder and sentenced to death. He is scheduled to be

executed after midnight on the morning of Friday, May 25, 2001. On Monday, May 21, Barbour filed in this court a motion for stay of execution and his first petition for a writ of habeas corpus. The court held a hearing with counsel for Barbour and respondent Michael Haley on May 22, limited to consideration of Barbour's motion for a stay of execution. Upon as much consideration of petitioner's and respondent's submissions to the record as is possible within the very short time allowed, as well as the arguments offered at the May 22 hearing, the court determines that a stay of execution must be granted because the court has insufficient time to adequately consider Barbour's habeas-corpus petition on the merits, including determination of whether there are statute-of-limitations barriers to the claims, and because a decision on the merits will require additional briefing, evidence, and perhaps an evidentiary hearing. The court also notes, however, that, although this court must retain jurisdiction of the case, it is willing to hold Barbour's habeas-corpus petition in abeyance pending exhaustion of his state-court proceedings unless the parties desire otherwise.

## I. JURISDICTION

■ The court has jurisdiction over this case pursuant to 28 U.S.C.A. § 2251; *see also* 28 U.S.C.A. § 1651(a); Rule 4 of the Rules Governing § 2254 Cases.[1] Section 2251, "Stay of State court proceedings," provides that

> "A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of dis-

charge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding."

The court's jurisdiction exists regardless of whether Barbour has any unexhausted state motions and appeals still pending. *See Arthur v. Haley*, 248 F.3d 1302 (11th Cir.2001) (the district court had jurisdiction to grant a motion for a stay even though it could not yet resolve a threshold jurisdictional question about the petitioner's habeas petition under the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (amending 28 U.S.C.A. §§ 2241–2255)); *see also Edwards v. Balisok*, 520 U.S. 641, 649, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); James S. Liebman and Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 13.3b (3d ed.1998) ("it is proper for the district court to enter a stay of execution and to hold the petition in abeyance pending exhaustion of remedies in the state courts" because "Under the terms of 28 U.S.C. § 2254(b), exhaustion of state remedies is not a necessary precondition to the filing of a federal habeas corpus petition, but instead a condition that must be fulfilled before relief may be granted. Exhaustion of state remedies, in other words, is not jurisdictional") (citing, among other cases, *Clarke v. Grimes*, 374 F.2d 550, 553 (5th Cir.1967)).

## II. PROCEDURAL BACKGROUND

On June 24, 1993, Barbour was convicted in the Circuit Court of Montgomery County, Alabama, of murder during the

---

1. 28 U.S.C. § 1651(a) states that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

commission of a rape, burglary, and arson in violation of 1975 Ala.Code §§ 13A–5–40(a)(3), (a)(4), and (a)(9).[2] Represented by two court-appointed attorneys, Frank Riggs and Clifford Heard, Barbour pleaded not guilty to the charges and did not testify at trial. On January 31, 1994, after a 10–2 jury recommendation that he receive the death penalty, the court found two aggravating and several mitigating circumstances and then concluded that the aggravating circumstances outweighed the mitigating ones and sentenced Barbour to death.

Barbour timely filed a direct appeal in Alabama state courts during which time Riggs and Heard continued to represent him. His conviction was affirmed by the Alabama Court of Criminal Appeals, *see Barbour v. State*, 673 So.2d 461 (Ala.Crim. App.1994), and the Alabama Supreme Court. *See Ex Parte Barbour*, 673 So.2d 473 (Ala.1995). Riggs and Heard's representation of Barbour ended after the Ala-

bama Supreme Court denied this direct appeal. Barbour's petition for writ of certiorari (prepared by a pro-bono attorney from Boston, Massachusetts who had been secured by the Equal Justice Initiative, a privately-funded, not-for-profit, public interest law firm in Montgomery, Alabama) was then denied by the United States Supreme Court. *See Barbour v. Alabama*, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996).

Barbour again found himself without counsel because his Boston attorney ceased representing him after the Supreme Court's denial of certiorari. After six months may have run on the federal limitations period for filing a habeas petition under 28 U.S.C.A. § 2244(d), the Equal Justice Initiative secured the services of a law professor from the University of Michigan to draft a Rule 32 petition and to begin work on securing state collateral review of Barbour's conviction.[3] Barbour submitted the professor's draft to

---

**2.** 1975 Ala.Code § 13A–5–40 reads in relevant part:

"(a) The following are capital offenses:

. . . . .

(3) Murder by the defendant during a rape in the first or second degree or an attempt thereof committed by the defendant; or murder by the defendant during sodomy in the first or second degree or an attempt thereof committed by the defendant.

(4) Murder by the defendant during a burglary in the first or second degree or an attempt thereof committed by the defendant.

. . . . .

(9) Murder by the defendant during arson in the first or second degree committed by the defendant; or murder by the defendant by means of explosives or explosion."

**3.** Under Alabama Rule of Criminal Procedure 32.1, a defendant is entitled to post-conviction relief under the following conditions:

"Subject to the limitations of Rule 32.2, any defendant who has been convicted of a

criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:

(a) The constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

(b) The court was without jurisdiction to render judgment or to impose sentence.

(c) The sentence imposed exceeds the maximum authorized by law or is otherwise not authorized by law.

(d) Petitioner is being held in custody after petitioner's sentence has expired.

(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;

state court on March 4, 1997, as a *pro se* application for relief.

The trial judge who reviewed Barbour's petition decided that it contained non-frivolous matters and could not be advanced adequately without the assistance of professional counsel. That judge exercised his discretion to appoint counsel to assist Barbour. However, the first appointed counsel withdrew from Barbour's case due to a conflict of interest. Joseph Espy, a Montgomery attorney, was then appointed to the case. Espy filed an amended Rule 32 petition and represented Barbour at an evidentiary hearing on March 18, 1998, but he did not file a post-hearing brief or proposed order. Between the hearing and the time judgment was entered, Espy explained that he would not represent Barbour any longer. Barbour's Rule 32 petition was denied on April 21, 1998.

After Espy terminated his representation of Barbour, Barbour did not obtain new counsel. Barbour claims he was not informed by Espy, or anyone else, of his right to appeal the Rule 32 judgment and, accordingly, he filed no further appeals in his case. As a result, it is possible that further state appeals may have become time-barred. Indeed, for over two years Barbour's case sat dormant, until the State filed a motion to set an execution date on September 8, 2000.

In January 2001, the Equal Justice Initiative secured Barbour's current counsel. On April 4, 2001, Barbour filed in Montgomery County Circuit Court a motion to

reopen his state post-conviction proceedings. On April 20, 2001, while Barbour's state-court motion to reopen was still pending, the Alabama Supreme Court set an execution date of May 25, 2001. The circuit court denied Barbour's motion on May 14. On May 18, Barbour filed a motion for stay of execution with the Alabama Supreme Court, and, on May 21, he filed a notice of appeal of the circuit court's denial to the Alabama Court of Criminal Appeals. The stay motion and the appeal are still pending in state courts. On May 21, Barbour filed his motion for stay of execution and his first petition for federal habeas corpus in this court.

## III. STANDARDS FOR GRANTING A STAY OF EXECUTION ON A FIRST PETITION

In *Lonchar v. Thomas*, 517 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996), the Supreme Court enunciated a clear rule governing a district court's ruling on a motion for stay of execution in a first federal habeas petition:

"If the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot. That is, if the district court lacks authority to directly dispose of the petition on the merits, it would abuse its discretion by attempting to achieve the same result indirectly by denying a stay."

*Id.* at 320, 116 S.Ct. at 1297 (expressly applying the principle of *Barefoot v. Es-*

(2) The facts are not merely cumulative to other facts that were known;
(3) The facts do not merely amount to impeachment evidence;
(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and

(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received.
(f) The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part."

*telle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), a · prior Supreme–Court case which concerned an appellate court's decision whether to grant a stay of execution pending appeal of the district court's judgment.)

Before the *Lonchar* decision, as early as 1982, the Eleventh Circuit had issued a very similar ruling. In *Dobbert v. Strickland,* 670 F.2d 938 (11th Cir.1982), the Court of Appeals stated that "Where the merits cannot be satisfactorily considered prior to execution of a scheduled death sentence, as in this instance, a stay should be granted." This rule, as crystallized in the *Lonchar* precedent, has already been recognized in Eleventh–Circuit caselaw. *See Hauser ex rel. Crawford v. Moore,* 223 F.3d 1316, 1321 (11th Cir.2000) ("In *Lonchar* ... the Court held that a district court could and should grant a stay in a first petition case unless the district court could dismiss the petition on the merits before the scheduled execution."); *see also Arthur v. Haley,* 248 F.3d 1302, 1302–03 (11th Cir.2001) (the district court did not abuse its discretion when it decided that, without proper briefing, perhaps a hearing, and sufficient opportunity to contemplate the claims and statute-of-limitations issues, it could not decide whether the court has jurisdiction under the Antiterrorism and Effective Death Penalty Act, and must grant a stay of execution); *Ford v. Haley,* 179 F.3d 1342, 1345 (11th Cir.), *vacated on other grounds,* 195 F.3d 603 (11th Cir.1999) ("When non-frivolous issues are presented on appeal in a capital case, the Supreme Court has made it clear [in *Barefoot v. Estelle* ] that a stay of execution should be issued, even if only temporarily, when a stay is needed for the court to address such issues before the appeal becomes moot.").

Under *Lonchar,* a district court considering a motion for a stay of execution must first ask itself whether it is in a position to dismiss the petitioner's habeas petition on the merits. *See* 517 U.S. at 319–320, 116 S.Ct. at 1296–1297. If the court finds itself incapable of an honest disposition of the petition on the merits, or if it cannot decide whether it should dismiss the petition, the court *must* grant a stay because the effect of a denial of a stay is the equivalent of a denial of the merits of a habeas petition. *See id.*

"[T]he interest in permitting federal habeas review of a first petition is quite strong." *Id.* at 330, 116 S.Ct. at 1302. Despite the strength of this interest, however, the rule enunciated in *Lonchar* does not require that a district court grant a motion for stay of execution when the habeas petition is patently frivolous; Rule 4 of the Rules Governing Habeas Corpus Cases ("Habeas Corpus Rules") gives the district court discretionary authority to summarily dismiss a petition "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief." *See id.* at 320, 116 S.Ct. at 1297; Habeas Corpus Rule 4. "The Habeas Corpus Rules themselves provide district courts with ample discretionary authority to tailor the proceedings to dispose quickly, efficiently, and fairly of first habeas petitions that lack substantial merit, while preserving those petitions raising serious questions." *Id.* at 325, 116 S.Ct. at 1299.

However, the *Lonchar* Court, ruling in a case in which the petitioner had filed his first petition the very day of the scheduled execution, made it clear that district courts have no discretion to deny a motion for a stay on a first habeas petition solely because the motion is filed at the "eleventh hour" before the scheduled execution, even if the late timing is due to conduct that is

inequitable, manipulative, or dilatory. *See id.* at 318–320, 329–332, 116 S.Ct. at 1296–1298, 1302–1303. The Court stated that previous precedents allowing a "court [to] consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief" are limited to the context of successive petitions, and thus do not apply to a *first* habeas petition. *Id.* at 321, 116 S.Ct. at 1297 (citing *Gomez v. United States Dist. Court for Northern Dist. of Cal.,* 503 U.S. 653, 654, 112 S.Ct. 1652, 1653, 118 L.Ed.2d 293 (1992)). While the Habeas Corpus Rules authorize dismissal of *successive* petitions on the grounds of abusive use of the writ,

> "prominent bodies charged with developing proposals for habeas law reform have pointed out [that] developing fair and effective rules to minimize the harms created by last-minute petitions in capital cases is quite complicated, requiring consideration of issues such as the State's control over setting execution dates, the time needed to exhaust state remedies, the common practice of substituting specialized capital counsel for habeas, and the time needed by habeas counsel to investigate claims, some of which (such as ineffective assistance of counsel) often cannot be raised on direct appeal."

*Id.* at 330–331, 116 S.Ct. at 1302. On account of this complexity, the *Lonchar* Court suggested that any effort to control abuse of first petitions should come through the framework of the Habeas Corpus Rules and not the courts. *See id.* In sum, *Lonchar* unequivocally permits a district court to dismiss a first federal habeas petition and deny a motion for stay when the petitioner's claims are patently meritless; yet *Lonchar* also unequivocally prohibits a court from denying a stay solely because of a petitioner's conduct in bringing an eleventh-hour first petition.[4]

## IV. THE APPEARANCE OF POSSIBLY MERITORIOUS CLAIMS IN BARBOUR'S PETITION

■ Barbour has raised at least ten claims in his petition for habeas corpus. The petition includes claims of actual innocence. Barbour contends he is actually innocent of Thelma Roberts's murder and, more specifically, that he is "actually innocent" of a death sentence. He intends to prove this by means that include DNA testing unavailable at the time of trial. In particular, Barbour asks that he be allowed to test fluid specimens taken from the victim. These specimens, though tested at the time of trial, may not have been

4. One federal habeas corpus rule, Rule 9(a), does specifically address the issue of delay: "A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petition shows that it is based on grounds which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred." The Supreme Court in *Lonchar* expressly avoided consideration of "what would constitute sufficient 'prejudice' to justify application of the Rule in the context of a last-minute habeas petition" because the lower courts had not reached the question. *See* 517 U.S. at 326–327, 116 S.Ct. at 1300. In the case before this court, the State of Alabama has offered no showing of prejudice resulting from the relatively late date of Barbour's filing. Haley incorrectly asserts that "prejudice" to the State is a "presumption"; he has not offered any specific claims about prejudice that would result from a stay. *See* Haley's Response to Barbour's Motion for a Stay of Execution, filed May 22, 2001. Without even a prima-facie showing of prejudice to the State from the granting of a stay, this court need not consider Rule 9(a), and Barbour need not demonstrate reasonable diligence.

tested by means accurate enough to identify with specificity the individual or individuals from whom they came.

This DNA evidence would be new evidence not considered by the jury. At this stage in the proceedings, it is unclear whether the DNA evidence alone would be sufficient to prove Barbour's innocence. The State has never contended that Barbour raped Roberts. However, the State has built its case on Barbour's confession and account of the murder scene, statements which Barbour has contended from the outset were the product of physical force and psychological coercion by law-enforcement officials. According to Barbour's confession, his co-defendant Christopher Hester committed the rape of Roberts, while Barbour subsequently stabbed and killed her. Evidence which contradicts this confession could support Barber's claim of coercion, or might, on other grounds, undermine the State's use of the confession. For example, the DNA evidence could establish that someone other than Hester committed the rape, or it could point to the participation of one of the original suspects in the case not associated with Barbour. Thus, by impeaching his own confession with DNA evidence, Barbour could undermine the central pillar of the State's case against him.

The Eleventh Circuit has recognized the "troubling and difficult" constitutional question presented by a petitioner like Barbour who, although he might be time-barred from making his first habeas corpus petition under § 2244(d), nonetheless presents a federal court with a claim of actual innocence.[5] *See Wyzykowski v. Dept. of Corrections,* 226 F.3d 1213, 1218 (11th Cir.2000). The Eleventh Circuit has stated that the restrictions of § 2244(d), when applied to a claim of actual innocence, could raise a question whether the writ of habeas corpus has been suspended in violation of article 1, section 9, clause 2, of the United States Constitution.[6] *See, e.g., Wyzykowski,* 226 F.3d at 1215–17; *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 113 (2d Cir.2000). Because of the "inherent injustice that results from the conviction of an innocent person," and the "technological advances that can pro-

---

5. Section 2244(d) sets forth the statute of limitations for filing federal habeas corpus claims as follows:

 "(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
 (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
 (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
 (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
 (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
 (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

6. The Suspension Clause provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

vide compelling evidence of a person's innocence," the constitutional sufficiency of § 2244(d) in the particular case of an actual innocence claim is a difficult and unsettled question. *Wyzykowski*, 226 F.3d at 1218. Like the majority of courts that have addressed the issue, the *Wyzykowski* court avoided determining the constitutionality of § 2244(d) and remanded the case to the district court to address the factual question whether the petitioner could make a showing of actual innocence.

■ Following *Wyzykowski* and *Arthur v. State*, civil action no. 01–N–00983–S, 2001 WL 429289 (N.D.Ala. Apr. 25, 2001), *aff'd*, 248 F.3d 1302 (11th Cir.2001), this court concludes that it must give Barbour the opportunity to meet the standards for a showing of actual innocence before it can make any decision about this claim on the merits. According to the Supreme Court in *Calderon v. Thompson*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), "the miscarriage of justice exception is concerned with actual as compared to legal innocence." *Id.* at 558, 118 S.Ct. at 1502 (citation omitted). The breadth of the exception is extremely narrow and in order "[t]o be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). The Court further elaborated:

"Although demanding in all cases, the precise scope of the miscarriage of justice exception depends on the nature of the challenge brought by the habeas petitioner. If the petitioner asserts his actual innocence of the underlying crime, he must show it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition. If, on the other hand, a capital petitioner challenges his death sentence in particular, he must show by clear and convincing evidence that no reasonable juror would have found him eligible for the death penalty in light of the new evidence."

*Calderon*, 523 U.S. at 559–60, 118 S.Ct. at 1502 (internal quotations and citations omitted).

It is impossible in the two days before Barbour's scheduled execution for this court to give Barbour an opportunity to establish even this one claim, and for the court to make its own findings and address the difficult constitutional questions concerning § 2244(d), while also leaving time for Barbour or the State to exercise its right to appeal.

Barbour's actual innocence claim is not the only one which cannot be determined before Friday's scheduled execution. Barbour now has pending in the Alabama Criminal Court of Appeals a motion to allow him to file an out-of-time appeal from the denial of his motion for a Rule 32. In support of that motion, Barbour has argued that a combination of factors—the alleged abandonment of his case by court-appointed counsel, his lack of education, and the denial of law-library resources in prison—entitle him to reopen his Rule 32 proceeding and to an out-of-time appeal. Should the state courts decide in his favor, it may be that under state law Barbour has a "properly filed application for State post-conviction relief" which tolls the federal statute of limitations under § 2244(d)(2). Moreover, the court cannot discern from Barbour's current submissions whether he intends to argue—and is able to prove—that some of the same considerations allegedly justifying his out-of-time state appeal meet the terms of other

exceptions to the running of the federal statute of limitations.

Accordingly, the court is simply unable to determine presently whether Barbour has complied with the § 2244(d)(1) statute of limitations.

As an example of another of Barbour's claims that might demand consideration on the merits, the court notes that Barbour challenges Alabama's use of the electric chair as cruel and unusual punishment in violation of the eighth amendment of the United States Constitution. Alabama is one of only two States in the country that requires death by electrocution. Recently, state legislatures in Georgia, Florida, Kentucky, and Tennessee have rejected electrocution as the sole method of execution. Barbour seeks to establish that, according to "evolving standards of decency" as evidenced in these legislative decisions, death by electrocution has become cruel and unusual. A similar claim was raised in *McNair v. Haley,* a petition for habeas corpus currently pending before this court. In *McNair,* the State sought to dismiss petitioner's challenge to the electric chair because he had not raised it in his state-court appeals. The court concluded that McNair's procedural default was excused because the legislative acts had not occurred by the time McNair brought his state appeals. Writing before the Georgia and Florida legislatures had acted, the court concluded:

> "[T]he recent legislative changes in Kentucky and Tennessee are not merely evidence relevant to an eighth-amendment challenge that abstractly existed prior to these changes. Instead, they are the necessary preconditions for the very claim itself. That Kentucky and Tennessee have recently enacted legislation phasing out the electric chair—thus

leaving Alabama as one of only four States to permit electrocution—may or may not constitute such a substantial change as to warrant overruling ... overwhelming precedent. It does, at any rate, serve as the basis for a claim that is only now actually a colorable claim. Because these new facts are the basis for a claim that was not reasonably available during the petitioner's state proceedings, this court finds cause to excuse the procedural default."

*McNair v. Haley,* 97 F.Supp.2d 1270, 1277 (M.D.Ala.2000). Barbour may be in the same situation as McNair and, accordingly, this court must have time to consider this claim on the merits.

The court has given two illustrative examples of claims in Barbour's petition that may warrant consideration on the merits. The court's selection of these claims for brief and preliminary discussion does not mean the court has decided that Barbour's other claims are more or less meritorious, or that they are more or less likely to be barred by the statute of limitations. In the time available, it is simply impossible for the court to consider all of Barbour's claims before Friday, the scheduled execution date. Further, the record is inadequate without additional briefing and evidentiary submissions, possibly including DNA test results. Given the limited record and time available, the court cannot conclude that Barbour's petition is patently meritless or barred by the statute of limitations. The court then "must issue a stay to prevent the case from becoming moot." *Lonchar,* 517 U.S. at 320, 116 S.Ct. at 1297.

Accordingly, it is ORDERED as follows:

(1) The motion for stay of execution, filed by petitioner Christopher Barbour on May 21, 2001, is granted.

(2) Until further order of this court, the execution of petitioner Barbour is stayed.

It is further ORDERED that the parties show cause, by May 30, 2001, as to why this court should not hold all proceedings in this court in abeyance so long as petitioner Barbour still has matters pending in the state courts.

### ORDER

It is ORDERED that respondent Michael Haley's motion to reconsider, filed May 23, 2001, is denied.

Haley argues erroneously that the court has not considered the applicability of statute-of-limitations barriers to petitioner Christopher Barbour's habeas petition, or that the court has wrongly treated the limitations question as only one of a number of factors. In fact, the court's consideration of the statute-of-limitations issue was express and central to the reasoning laid out in its order granting Barbour's motion for a stay of execution.

As in cases such as *Arthur v. Haley*, 248 F.3d 1302 (11th Cir.2001), the court found that it could not deny Barbour's motion for a stay, that is, effectively dismiss Barbour's habeas petition, because the available time and record are insufficient for the court to "adequately consider Barbour's habeas-corpus petition on the merits, including determination of whether there are statute-of-limitations barriers to the claims." In other words, the court cannot, on such short notice, even determine whether Barbour's claims are time-barred, no less determine the merits of those claims that are not time-barred.

The court then found the appearance of possibly meritorious claims in Barbour's petition that offer a plausible basis for overcoming or sidestepping any statute-of-limitations problems. Accordingly, the court found that it could not make a final determination from the face of the record that *any* of Barbour's claims are patently time-barred. The court then specifically elaborated upon several claims, including the relation of those claims to the statute of limitations.

For one claim, the court explained that Barbour offers plausible claims of actual innocence and that numerous courts, including the Eleventh Circuit, have noted that the time limitations of 28 U.S.C.A. § 2244(d) raise a difficult constitutional question in the context of a claim of actual innocence. These courts noted the Constitution might override the constraints of § 2244(d) when certain standards for showing actual innocence have been met. Discussing a second claim, the court described the pendency of Barbour's motions in state court, concluding that a favorable state-court disposition might place Barbour within the federal limitations period. The court also remarked that some of the arguments offered by Barbour that are relevant to the state-court disposition might also implicate some of the other exceptions to the tolling of the one-year limitations period in § 2244(d) besides § 2244(d)(2) (that is, the exception for properly-filed, pending state claims).

Haley's argument mistakenly assumes that, in a ruling on a motion for stay of execution on a first habeas petition, a court can and should keep questions of the merits of the claims walled off from the statute-of-limitations questions, and must dispose of the latter as a "threshold" matter before any consideration of the former. But, as the example of Barbour's actual-innocence claims well illustrates, the court's consideration of the possible merits of Barbour's petition necessarily refers to both the substantive and tolling issues be-

cause they are sometimes inextricably intertwined. Haley's insistence upon a final disposition of the "threshold" statute-of-limitations questions may, in part, reflect a confusion between the standards for granting a stay on a first habeas petition with the standards for habeas petitions in other procedural postures (successive petitions, disposition on the merits, etc.). Indeed, Haley has not cited any case favoring his argument that is in the procedural posture of a motion for a stay on a first petition.

As the court's order granting the stay explained in its section on jurisdiction, a district court has preliminary jurisdiction to stay an execution before it is able to decide whether a petition should be dismissed, that is, before it needs to decide whether it lacks jurisdiction to dispose of the claims on the merits, for example, because of statute-of-limitations obstacles. *See, e.g., Arthur v. Haley*, 248 F.3d 1302 (11th Cir.2001) (the district court had jurisdiction to grant a motion for a stay even though it could not yet resolve a threshold jurisdictional question about the petitioner's habeas petition under the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (amending 28 U.S.C.A. §§ 2241–2255)).

To reiterate, Barbour's motion for a stay came before this court on a *first* petition. The court expressly found that Barbour's claims, from the face of the record, carry the potential to be meritorious, specifically including the potential not to run afoul of any statute-of-limitations barriers (for example, the court's order included specific descriptions of ways in which Barbour's claims might satisfy the literal terms of § 2244(d) and, thus, not be solely dependent upon the existence of grounds for equitable tolling).