**Donald DALLAS, Petitioner,**

v.

**Michael HALEY, Commissioner, Alabama Department of Corrections, et al., Respondents.**

**No. CIV.A.02–T–777–N.**

United States District Court, M.D. Alabama, Northern Division.

Oct. 15, 2002.

Christine A. Freeman, LaJuana S. Davis, Federal Defender Middle District of Alabama, Montgomery, AL, for Petitioner.

Beth Jackson Hughes, Henry Mitchell Hughes, Henry Mitchell Johnson, Office of Atty. General Alabama State House, Montgomery, AL, for Respondents.

## ORDER STAYING EXECUTION OF DEATH–ROW INMATE

MYRON H. THOMPSON, District Judge.

Petitioner Donald Dallas has been convicted of capital murder and sentenced to death. On July 9, 2002, he filed a first petition for writ of habeas corpus. The respondents to Dallas's petition are the Commissioner of the Alabama Department of Corrections, the Attorney General of Alabama, and a prison warden.

Dallas is scheduled to be executed by lethal injection at 6:00 p.m. on Thursday, October 17, 2002. On Wednesday, October 9, after having been denied an execution stay by the Alabama Supreme Court a few days earlier, Dallas filed in this court a motion for stay of execution pending resolution of his earlier filed first federal habeas petition. The court held a hearing with counsel for all parties on October 10, 2002, limited to consideration of Dallas's motion for a stay of execution and respondents' earlier filed motion to dismiss. Upon as much consideration of Dallas's and respondents' submissions in the record as is possible within the very short time allowed, as well as the arguments offered at the October 10 hearing, the court determines that a stay of execution must be granted because the court has insufficient time to consider adequately Dallas's habeas-corpus petition on the merits.

## I. JURISDICTION

The court has jurisdiction over this case pursuant to 28 U.S.C.A. § 2251 (stay of state-court proceedings); *see also* 28 U.S.C.A. § 1651(a) (writs); Rule 4 of the Rules Governing § 2254 Cases. Section 2251, entitled "Stay of State court proceedings," provides that, "A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding."

## II. PROCEDURAL BACKGROUND

On October 19, 1995, Dallas was convicted by a jury in the Circuit Court of Montgomery County, Alabama, of the murder of Hazel Liveoak during the commission of a kidnaping and robbery, in violation of 1975 Ala.Code § 13A–5–40(a)(1) and (a)(2).[1]

---

**1.** 1975 Ala.Code § 13A–5–40 reads in relevant part:
"The following are capital offenses:
(1) Murder by the defendant during a kidnaping in the first degree or an attempt thereof committed by the defendant.

(2) Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant."

Dallas pleaded not guilty to the charges and did not testify at trial. On November 16, after an 11–1 jury recommendation that he receive the death penalty, the state court adopted the jury's recommendation and sentenced Dallas to death.

Dallas's conviction and sentence were affirmed by the Alabama Court of Criminal Appeals, *Dallas v. State*, 711 So.2d 1101 (Ala.Crim.App.1997), and the Alabama Supreme Court, *Ex Parte Dallas*, 711 So.2d 1114 (Ala.1998), and his petition for writ of certiorari was denied by the United States Supreme Court. *Dallas v. Alabama*, 525 U.S. 860, 119 S.Ct. 145, 142 L.Ed.2d 118 (1998).

After the Supreme Court denied Dallas's petition, Dallas was left without counsel. On September 23, 1999 (after 352 days had run on the federal-limitations period for filing a habeas petition under 28 U.S.C.A. § 2244(d)), Dallas filed a pro se petition in state court, pursuant to Rule 32 of the Alabama rules of Criminal Procedure, seeking state-collateral review of his conviction. After several requests, the trial court appointed counsel for Dallas. On June 21, 2001, the state-trial court held an evidentiary hearing into Dallas's claims, and, on September 25, denied Dallas's Rule 32 petition.

Thirty days later, on October 25, 2001, Dallas filed a motion in the trial court to alter, vacate, or amend judgment. Dallas's motion was denied on October 29. A month after this denial, on November 28, Dallas filed a notice of appeal with the Alabama Court of Criminal Appeals. On December 3, the State filed a motion with the appeals court, asking that it dismiss Dallas's appeal on the ground that it was untimely. On December 7, the State's motion was granted, and Dallas's appeal was dismissed.

On February 12, 2002, still seeking state-collateral review, Dallas returned to the state-trial court and filed a "motion to have court find that the time for filing notice of appeal was tolled by motion to alter, vacate, and amend judgment." The trial court granted Dallas's motion that same day. On February 15, Dallas filed a second notice of appeal in the Alabama Court of Criminal Appeals. The State again moved to dismiss that appeal, and the appeals court ordered Dallas's second notice of appeal stricken because his first appeal had been untimely.

On March 13, 2002, Dallas petitioned for a writ of certiorari in the Alabama Supreme Court, and, on June 28, that petition was dismissed.

Ten days later, on July 9, 2002, Dallas filed his first federal petition for writ of habeas corpus with this court pursuant to 28 U.S.C.A. § 2244.

On July 17, 2002, the respondents filed a motion to dismiss Dallas's petition as untimely filed. The motion was referred to a United States Magistrate Judge for consideration and recommendation. Throughout August and September, the dismissal motion was briefed and, at the request of the magistrate judge, was re-briefed on new issues.

On September 9, 2002, while his first federal habeas petition had been pending for only two months, the Alabama Supreme Court set Dallas's execution for October 17, 2002.

On October 3, 2002, the Alabama Supreme Court denied a motion by Dallas to stay his execution.

On October 8, 2002, the magistrate judge entered a recommendation that the respondents' dismissal motion be denied, with the result that, if the recommendation is adopted by the court, Dallas's federal habeas petition will proceed in this court.

On October 9, 2002, Dallas filed the currently pending motion for this court to stay his execution.

## III. STANDARD FOR GRANTING A STAY OF EXECUTION ON A FIRST PETITION

In *Lonchar v. Thomas*, 517 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996), the Supreme Court set forth the guiding principle in this case: "If the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot." 517 U.S. at 320, 116 S.Ct. at 1297, 116 S.Ct. 1293. "That is, if the district court lacks authority to directly dispose of the petition on the merits, it would abuse its discretion by attempting to achieve the same result indirectly by denying a stay." *Id.; see also Arthur v. Haley*, 248 F.3d 1302, 1302–03 (11th Cir.2001) (refusing to find district court abused its discretion in granting stay); *Hauser ex rel. Crawford v. Moore*, 223 F.3d 1316, 1321 (11th Cir.2000) (same); *Dobbert v. Strickland*, 670 F.2d 938, 940 (11th Cir.1982) (granting stay); *Barbour v. Haley*, 145 F.Supp.2d 1280 (M.D.Ala.2001) (Thompson, J.) (same).

Under *Lonchar*, a district court considering a motion for a stay of execution must first ask itself whether it is in a position to dismiss the petitioner's habeas petition on the merits. 517 U.S. at 319–20, 116 S.Ct. at 1296–97. If the court finds itself incapable of an honest disposition of the petition on the merits, or if it cannot decide whether it should dismiss the petition, the court must grant a stay because the effect of a denial of a stay is the equivalent of a denial of the merits of a habeas petition. *Id.*

 Therefore, in order to refuse to grant a stay of execution, this court must be convinced that it can fairly and thoroughly consider and dismiss the petition on its merits. That is not to say that this court may not dismiss the petition and allow the execution to proceed if all of the claims in the petition are patently frivolous or meritless. *See Barbour*, 145 F.Supp.2d at 1286. However, if even one claim could possibly hold promise, the district court is obligated to impose a stay of execution if it does not have adequate time to dispose of that claim on its merits. *Id.*

## IV. MOTION TO DISMISS

As a preliminary matter, the respondents have filed a motion to dismiss Dallas's habeas petition on the grounds that it is untimely. The parties have briefed and re-briefed this issue, resulting in a recommendation from the magistrate judge that respondents' motion to dismiss be denied. The respondents filed their objections to the magistrate judge's recommendation on October 10, 2002, and, on October 11, Dallas filed a response to their objections.

Without needlessly getting bogged down in the details, suffice it to say that the issue of whether Dallas's habeas petition was timely filed is a very complex question which turns on whether a certain Alabama procedural rule was firmly established and regularly followed. As mentioned above, this issue is complicated enough that the magistrate judge asked the parties to re-brief it. While the magistrate judge had some time to prepare her recommendation on this difficult problem, the court has less than three working days to address the respondents' objections to that recommendation before Dallas's scheduled execution. A resolution of those objections must be resolved before this court can even address Dallas's habeas petition.

The respondents have asked that the court resolve their dismissal motion very quickly. Unfortunately, however, a quick and complete resolution is impossible. Aside from the fact that the court's time has been, and still is, already filled with preparation for a long-scheduled and quite complicated first-amendment establishment-clause case set to begin trial today,

as well as the need to issue a ruling on a preliminary-injunction request just heard in the last two weeks in another important and complicated case claiming state prison overcrowding, the court could not resolve in three days the dismissal motion even if it had just this one case, the habeas case, before it. Most significantly, if the court agreed with the respondents that the magistrate judge's recommendation is incorrect, the court could not simply adopt the recommendation as it could if it agreed with it, but would instead have to issue its own opinion explaining why it disagreed with the magistrate judge, especially if there is to be meaningful review on appeal. *Cf. OSI, Inc. v. United States*, 285 F.3d 947, 953 (11th Cir.2002) (order granting summary judgment that merely said the court was in agreement with movant's arguments was insufficient for appellate review). In short, for the respondents to prevail, the court cannot simply adopt (or even summarily, without explanation, reject) the magistrate judge's recommendation.

The respondents' desire that the court act quickly on their dismissal therefore leaves the court with two choices. The first, and less preferable option, would be to resolve the motion-to-dismiss matter quickly. By moving quickly, however, the court would conclude, from it quick assessment, that the magistrate judge's recommendation is facially correct; that is, although the court cannot say that with a more thorough and detailed assessment it might not ultimately agree with the respondents, it must say, as of now, that the recommendation appears superficially plausible. Thus, by moving quickly, the court would rule against the respondents twice because of time pressures: first, on the respondents' motion to dismiss, and second, on Dallas's motion to stay. The case would then proceed to the merits without the court having given careful and detailed consideration to the timeliness is-

sue presented in the respondents' dismissal motion. Surely, the respondents do not want this outcome.

The second, and more preferable option, would be to grant a stay so that the court has time to consider fully and adequately the respondents' motion to dismiss, and then, only if the court agrees with the magistrate judge's recommendation, to consider the merits of Dallas's petition. That option creates the least damage from the time pressure the court is currently under: while it must stay Dallas's execution, the court would be allowed sufficient time to consider respondents' motion to dismiss and to determine whether this case should proceed on the merits.

■ Thus, as an initial matter, the need to have enough time to consider fairly and adequately the respondents' motion to dismiss is, by itself, reason enough for the court to grant a stay in this case.

## V. THE APPEARANCE OF POSSIBLY MERITORIOUS CLAIMS IN DALLAS'S FEDERAL HABEAS PETITION

The court also must grant a stay in this case because of the potential merits of Dallas's habeas petition. Dallas has raised at least 15 different claims in his petition. A number of these claims are facially meritorious, and some may even require a time consuming and fact-intensive inquiry by the court. Examples of such claims are Dallas's contentions that: (1) the prosecutor exercised peremptory strikes in a racially discriminatory matter (12 of 15 black jurors were struck in this case), *see Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (2) Dallas was denied his sixth-amendment right to counsel due to an actual conflict of interest of his attorney (Dallas's attorney represented the State as deputy attorney general in one case while at the same time defending Dallas in another), *see Holloway v. Arkan-*

*sas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); and (3) Dallas was denied the effective assistance of counsel before, during, and after his capital murder trial, *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Besides being potentially meritorious, these allegations at this time remain unrebutted: the respondents have not yet filed an answer to Dallas's petition, and instead have solely contended that Dallas's petition is untimely. To consider fairly and thoroughly Dallas's facially meritorious claims, the court would, at the very least, need to see the respondents' answer.

Of the above claims, the most facially meritorious (that is, the most promising from the record without the advantage of an answer from the respondents) is also the one that seems potentially to require the most lengthy and intensive factual inquiry: his claim that he was denied the effective assistance of counsel.[2] *See Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070 (stating that ineffectiveness is a mixed question of law and fact). Dallas says that he was represented by a total of eight different attorneys prior to his trial, most of whom did very little work on his case, and six of whom withdrew from the case prior to the final appointment of Dallas's two trial counsel, Algert S. Agricola on February 1, 1995, and Jeffry C. Duffey on September 7, 1995. Agricola himself moved for leave to withdraw based on an actual conflict of interest, a motion that the trial court denied. Due to this conflict of interest and other scheduling conflicts, according to Dallas, neither attorney put more than a minimal amount of time into his case until the few days prior to trial.[3] In fact, his attorneys went so far as to file a motion for continuance on October 6, stating that they had not yet had time to work on Dallas's defense, a motion the trial court denied. Because they were unable to put any time into Dallas's defense, Dallas claims that his attorneys made a number of substantial errors: for example, they did not meet with or interview any state witnesses; they conceded in opening argument that Dallas was responsible for Liveoak's death and did not investigate her precise cause of death; they did not call any witnesses who were with Dallas just before he allegedly committed the offense; and they basically allowed the State to present its case essentially unchallenged.

On their face, these facts are potentially meritorious under the demanding *Strickland* standard. In that case, the Supreme

---

**2.** The court recognizes that such *Strickland* claims are made in virtually every habeas-corpus petition. The omnipresence of such claims, however, does not mean that the court should assume Dallas's ineffective-assistance-of-counsel claim is without merit. In fact, having seen many such claims, the court is impressed, at least initially, that Dallas's claim potentially may have more merit than most.

**3.** Dallas alleges that, having been appointed Dallas's attorney on September 7, Duffey was involved in a multi-defendant jury trial in another case from September 25 until October 6, just ten days before Dallas's trial was scheduled to begin. As of October 6, Duffey had yet to work on Dallas's defense. Duffey met with Dallas for the first and only time on October 10, one day before the suppression hearing in front of the trial court.

Dallas also alleges that, after being appointed Dallas's attorney on February 1, Agricola met with Dallas and informed him that he would be filing a motion to have himself removed because of the conflict of interest. Agricola did not formally meet with Dallas again before the October 11 suppression hearing. He, too, was occupied with litigation in the weeks preceding Dallas's trial, and argued an emergency appeal in front of the Eleventh Circuit Court of Appeals on October 11; because of this litigation, Agricola did not work on Dallas's case for the entire month of September. Agricola spent just 55.80 out-of-court hours on Dallas's case over the almost ten months he represented Dallas.

Court laid out the standard for ineffective assistance of counsel:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Dallas's claims arguably could meet this standard. *See, e.g., Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (finding ineffective assistance of counsel where counsel failed to conduct any pretrial discovery); *Appel v. Horn,* 250 F.3d 203 (3d Cir.2001) (finding ineffective of counsel where counsel did nothing to investigate or prepare for the petitioner's competency determination); *Holsomback v. White,* 133 F.3d 1382 (11th Cir.1998) (finding ineffective assistance of counsel where trail attorney failed to conduct investigation into the absence of medical evidence). Thus, on its face, Dallas's claim of ineffective assistance of counsel has potential merit.[4]

While Dallas has a number of potentially meritorious claims, his ineffective-assistance-of-counsel claim on its face seems to hold the most promise, and the court therefore has used it as an example of the potential merits of Dallas's federal habeas petition. The court's selection of this claim for a brief and preliminary discussion does not mean the court has concluded that Dallas will prevail on the claim (for, as stated, the court has not yet had the advantage to hear from the respondents on the merits, or lack thereof, as to this claim), nor has the court decided that Dallas's other claims are more or less meritorious. Rather, the court simply has neither the time to dispose of Dallas's ineffective-assistance-of-counsel claim nor the time to address any of his other claims before his scheduled execution on October 17, 2002. This is true for a number of reasons. First, the court has not received the respondents' answer to Dallas's petition, and therefore does not know what facts may be in dispute. Even if it were to receive the respondents' answer today, the court could not address thoroughly each party's contentions, or even decide if any claims require an evidentiary hearing, before October 17. Second, from the face of Dallas's petition, the court will possibly need an evidentiary hearing to determine if Dallas's attorneys' performance really was ineffective; such a hearing could not take place before October 17. And third, because of pressing matters in other cases, the court does not have enough resources to address Dallas's habeas petition before October 17.

As noted above, if even one of Dallas's claims could possibly hold promise, the court is obligated to impose a stay of execution if it does not have adequate time to dispose of that claim on its merits. *See Barbour,* 145 F.Supp.2d at 1286. Dallas does have potentially promising claims, especially his ineffective-assistance-of-counsel claim, and the court does not have time to dispose of these claims on their merits before Dallas's scheduled execution. As such, the court is obligated to impose a stay of execution.

---

4. It is noteworthy that Alabama Supreme Court Justice Johnstone, in dissenting from the order setting Dallas's execution date, recognized that, if Dallas could conceivably surmount the procedural hurdles facing him, his "ineffective assistance of counsel claims ... seem worthy of consideration." *Ex Parte Dallas,* (Doc. no. 1961457, September 9, 2002) (Ala.2002) (Johnstone, J., dissenting).

### VI. CONCLUSION

For the reasons stated above, it is ORDERED as follows:

(1) Petitioner Donald Dallas's motion for a stay of execution, filed October 9, 2002 (Doc. no. 25), is granted.

(2) Until further order of this court, the execution of petitioner Dallas is stayed.

The clerk of the court is DIRECTED to give notice of this order by telephone to Department of Corrections Commissioner Michael Haley and the attorneys for all parties