[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 860 
Christopher D. Barbour appeals from the circuit court's denial of his petition for postconviction relief, filed pursuant to Rule 32, Ala.R.Crim.P. On June 24, 1993, Barbour was convicted of three counts of capital murder for the killing of Thelma Bishop Roberts. The murder was made capital because it was committed during the course of a first-degree rape, a first-degree burglary, and a first-degree arson. See § 13A-5-40(a)(3), (a)(4), and (a)(9), Ala. Code 1975. After a sentencing hearing, the jury recommended, by a vote of 10-2, that Barbour be sentenced to death. The trial court accepted the jury's recommendation and sentenced Barbour to death by electrocution. This Court affirmed Barbour's convictions on direct appeal. See Barbour v. State,673 So.2d 461 (Ala.Crim.App. 1994).
Barbour petitioned the Alabama Supreme Court for certiorari review. The Supreme Court granted his petition, pursuant to Rule 39(c), Ala.R.App.P., as it read before it was amended effective May 19, 2000.[1] On August 18, 1995, the Supreme *Page 861 
Court affirmed Barbour's conviction and sentence. See Ex parteBarbour, 673 So.2d 473 (Ala. 1995), and a certificate of judgment was issued on November 7, 1995. Thereafter, Barbour petitioned the United States Supreme Court for certiorari review. On July 24, 1996, the United States Supreme Court denied Barbour's petition for the writ of certiorari. See Barbour v.Alabama, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996).
On March 4, 1997, Barbour filed a Rule 32 petition, challenging his capital-murder convictions and death sentence. With the assistance of counsel, Barbour filed an amendment to his Rule 32 petition on September 10, 1997. After the State filed a response to Barbour's petition, the circuit court conducted an evidentiary hearing and heard evidence regarding the claims raised in the petition. On April 21, 1998, the circuit court entered a lengthy written order denying the petition. (C. 409-467.) Barbour did not appeal the denial of his petition.
On September 8, 2000, the State asked the Alabama Supreme Court to set an execution date for Barbour. On April 4, 2001, Barbour filed a "Motion for Preservation of DNA Evidence" and a "Motion to Reopen Rule 32 Proceeding." On April 20, 2001, the Alabama Supreme Court set an execution date of May 25, 2001, for Barbour. On April 24, 2001, in response to Barbour's motion to reopen the Rule 32 proceeding, the State filed a pleading entitled "Answer and Motion to Dismiss Barbour's Successive Rule 32 Petition for Relief from Conviction and Sentence." The circuit court[2]
treated the motion to reopen as a Rule 32 petition and summarily denied it on May 16, 2001. (C. 631-53.) On May 18, 2001, Barbour filed a motion in the Alabama Supreme Court seeking a stay of execution. On May 21, 2001, Barbour filed a notice of appeal to this Court from the denial of his motion to reopen the Rule 32 proceeding. On that same date, he filed a motion for a stay of execution and a petition for a writ of habeas corpus in the United States District Court for the Middle District of Alabama. On May 23, 2001, the district court granted Barbour's motion for a stay pending resolution of his state-court proceeding and his federal habeas corpus proceeding. See Barbour v. Haley,145 F.Supp.2d 1280 (M.D.Ala. 2001). This appeal followed.
This is an appeal from the denial of a collateral petition attacking Barbour's death sentence. In reviewing Barbour's direct appeal, this Court applied a plain-error standard of review. See Rule 45A, Ala.R.App.P. However, we do not apply a plain-error standard when reviewing the denial of a Rule 32 petition in a death case. Hill v. State, 695 So.2d 1223 (Ala.Crim.App. 1997). Instead, we apply an abuse-of-discretion standard. "If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition." Reed v. State, 748 So.2d 231, 233 (Ala.Crim.App. 1999) (citing Roberts v. State, 516 So.2d 936 (Ala.Crim.App. 1987)). We will reverse a circuit court's findings only if they are "clearly erroneous." Jenkins v. State, [Ms. CR-97-0864, February 27, 2004] ___ So.2d ___, ___ (Ala.Crim.App. 2004). *Page 862 
 "`"[A] finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). . . . If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).' [Anderson v. City of Bessemer City, N.C.], 470 U.S. [564] at 573-74, 105 S.Ct. [1504] at 1511[, 84 L.Ed.2d 518] [(1985)]."
Morrison v. State, 551 So.2d 435, 436-37 (Ala.Crim.App. 1989); see also Giles v. State, [Ms. CR-00-0376, April 30, 2004] ___ So.2d ___, ___ (Ala.Crim.App. 2004).
Barbour filed this action in the circuit court. According to Rule 32.3, Ala.R.Crim.P., he has the "burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Moreover, the procedural default grounds contained in Rule 32, Ala.R.Crim.P., apply to all cases — even those in which the death penalty has been imposed. See, e.g., Hooks v. State, 822 So.2d 476, 479-81 (Ala.Crim.App. 2000).
The State's evidence at Barbour's trial tended to show that on March 21, 1992, 16-year-old William Roberts found the naked and partially burned body of his mother, Thelma Bishop Roberts, lying on the floor of her bedroom at her home on Manley Drive in Montgomery. When the body was found, there was a white plastic trash bag over her head and a knife protruding from her chest. Additionally, the jewelry that Roberts always wore was missing.
An autopsy revealed that Roberts died as a result of multiple stab wounds to the chest. Two of the wounds were inflicted with such force that the knife went all the way through Roberts's body, piercing her back. One of the wounds pierced her left lung and another pierced her heart, causing extensive internal bleeding. In all, Roberts was stabbed nine times. Additionally, the autopsy revealed that Roberts had suffered repeated blows to her head.
Upon questioning by the police, Barbour gave a detailed account of the circumstances surrounding Roberts's murder. He told police that on March 20, 1992, he, Chris Hester, and Mike Mitchell went to see "Koon," a friend of Hester's who lived on Manley Drive. After discovering that Koon was not home, the three went across the street to the Roberts's house. Initially, everyone sat down in the living room and drank beer. Hester and Roberts started talking; however, Roberts subsequently left the living room and went to another part of the house. Shortly after Roberts left the living room, Hester also left the living room. A short while later, Barbour and Mitchell heard loud noises coming from the back of the house and went to investigate. Upon entering a bedroom, they saw that Roberts was naked and Hester was wearing only his pants. Hester struck Roberts, and Barbour and Mitchell began hitting her about the head, causing her to fall to the floor. Barbour and Mitchell held Roberts down while Hester raped her. After Hester got up and pulled on his pants, Barbour told the others that they could not leave because *Page 863 
Roberts could identify them. Barbour went to the kitchen and got a knife; he then returned to the bedroom, where he knelt and stabbed Roberts several times. Barbour left the knife in Roberts's body, stood up, walked to the closet, threw some clothes from the closet around her body, and set them on fire. As the three men fled the house, Barbour pulled the smoke detector off of the wall in the hallway and threw it down.
Barbour raises the following claims concerning the denial of his motion to reopen the Rule 32 proceeding, which the circuit court treated as another Rule 32 petition.
 I.
Barbour argues that the circuit court erred when it treated his "Motion to Reopen Rule 32 Proceeding" as a successive Rule 32 petition. Specifically, he contends that the court should have allowed him to "reopen" his previous Rule 32 petition so that he could amend that timely filed petition in order to present additional claims. Rule 32, Ala.R.Crim.P., contains no provision that allows for the "reopening" of a Rule 32 petition after an order denying the petition has been entered. Indeed, Rule 32.7(b), Ala.R.Crim.P., states: "Amendments to pleadings may be permitted at any stage of the proceedings prior to the entry ofjudgment." (Emphasis added.) See also Allen v. State,825 So.2d 264, 268 (Ala.Crim.App. 2001), aff'd, 825 So.2d 271 (Ala. 2002). Because the circuit court had long since entered its judgment in Barbour's initial Rule 32 petition, Barbour was not entitled to amend that petition.
Barbour's reliance on Fountain v. State, 842 So.2d 719
(Ala.Crim.App. 2000), aff'd in part, rev'd in part, and remanded,842 So.2d 726 (Ala. 2001); Ex parte A.D.R., 690 So.2d 1208
(Ala. 1996); and Longmire v. State, 443 So.2d 1265 (Ala. 1982), in support of his contention is misplaced. Instead, those decisions stand merely for the proposition that a Rule 32 petition may be used to obtain an out-of-time appeal from a trial court's judgment, not that it may be used to reopen an earlier Rule 32 proceeding in order to add additional claims for relief. The Alabama Supreme Court's decision in Longmire v. State
stands merely for the proposition that a petitioner may obtain an out-of-time direct appeal of his conviction by filing a timely petition for postconviction relief. Likewise, in Ex parteA.D.R., the Supreme Court extended the application of Rule 32 to a juvenile who sought an out-of-time appeal from the juvenile court's order transferring him from the juvenile court to the circuit court to be tried as an adult. Finally, we note that this Court's holding in Fountain v. State — that a second Rule 32 petition may be used to obtain an out-of-time appeal from the denial of a previous Rule 32 petition when a petitioner failed, through no fault of his own, to receive notice of the dismissal of the earlier petition in time to file a timely notice of appeal — was effectively overruled by the Supreme Court in Marshall v.State, 884 So.2d 900, 905 (Ala. 2003) ("[T]he writ of mandamus is `the only remedy available' to those who, . . . through no fault of their own, fail to receive notice of the dismissal of their Rule 32 petition in time to effect a timely appeal therefrom."). Contrary to Barbour's contention, none of these decisions stand for the proposition that a Rule 32 proceeding may be "reopened." Therefore, the circuit court properly refused to allow Barbour to reopen the prior Rule 32 proceeding.
Because the circuit court had no authority to reopen the proceeding related to Barbour's previous Rule 32 petition, the court used the only method available for reviewing Barbour's additional claims — treating the motion as a successive petition, as provided in Rule 32.2(b), Ala.R.Crim.P. *Page 864 
Rule 32.2(b), at the time Barbour filed his "motion to reopen," stated:[3]
 "The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."
Accordingly, we will review the remainder of Barbour's claims on appeal as if they were presented in a second petition for postconviction relief.
 II.
Barbour argues that the circuit court erred in denying his motion for DNA testing. Specifically, Barbour argues that "[t]he court should order the State to preserve the biological evidence in this case and order DNA testing where such testing, because of significant, recent technological developments[,] has the capacity to exonerate [the petitioner] or cast serious doubts as to his guilt."
The circuit court made the following findings with regard to this claim:
 "Barbour contends that DNA testing should be performed to show his two statements that were admitted at trial are unreliable. Barbour's motion to reopen Rule 32 proceedings, pp. 31-36. More specifically, Barbour requests that DNA testing be performed to establish that he did not rape Thelma Roberts, the victim. He seeks DNA testing despite the fact that no evidence has ever been presented to show that he raped the victim. Moreover, in his statements that were admitted at trial Barbour does not admit to raping the victim. See, Barbour, 673 So.2d at 463. Rather, Barbour does state that he held the victim while Chris Hester raped her. Id.
 "The State responds that three separate procedural defenses are applicable to this claim: (1) the statute of limitations procedural bar; (2) the successive petition procedural bar; and (3) the lack of a showing that the supporting facts are newly discovered evidence. The court finds that these three procedural defenses do apply to this claim and, as a result, this claim is procedurally barred from review.
 "First, under Alabama law, this claim is procedurally barred from consideration in state court because Barbour's successive petition was filed beyond the two year statute of limitations stated in Ala.R.Crim.P. 32.2(c).[4] The rule requires a Rule 32 petition to be filed `within two years after the issuance of the certificate of judgment by the Court of Criminal Appeals under 41, A.R.App.P.' Id. . . . The certificate of judgment issued on November 7, 1995. . . . Barbour's time for filing a Rule 32 petition expired on November 7, 1997. The court finds that this claim is filed well beyond the two-year statute of limitations and denies it on that basis. See, e.g., Wright v. State, 766 So.2d 213, 215 (Ala.Crim.App. 2000).
 "The Court of Criminal Appeals, in another case deciding a time-barred *Page 865 
claim where the execution date had been set, has stated that `two year statute of limitations in Rule 32.2(c), Ala.R.Crim.P., is mandatory and jurisdictional.' Arthur v. State, [No. CR-00-1393, April 25, 2001] 820 So.2d 886 (Ala.Crim.App. 2001). There are no exceptions to the application of the statute of limitations to an untimely filed Rule 32 petition. Id., at p. 6.
 "In addition, the Court denied this claim because it is raised in a successive petition. This claim was not raised by Barbour in the initial Rule 32 petition filed on his behalf on March 4, 1997, or in his amended petition filed on September 10, 1997. This claim is, therefore, barred as a successive petition different grounds claim under Rule 32.2(b), Ala.R.Crim.P. That rule, in relevant part, states as follows:
 "`A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.'
 "Id. Barbour has not alleged that the grounds for this claim were not known and could not have been ascertained through reasonable diligence in March 1997, when he filed his initial Rule 32 petition, or in September 1997, when he filed his amended Rule 32 petition. The Court, therefore, finds that this claim is procedurally defaulted under the successive petition rule stated in Rule 32.2(b), Ala.R.Crim.P.
 "Finally, Barbour has failed to demonstrate that the grounds for this claim are based upon newly discovered facts. Five requirements must be met to establish a fact as newly discovered. A failure to show any one of the five requirements establishes that the fact is not newly discovered evidence as defined by Ala.R.Crim.P. 32.1(e). Barbour has not even alleged that this claim is supported by facts constituting newly discovered evidence. The Court finds, therefore, that this claim cannot be reviewed on the merits because Barbour has not made a showing that it is supported by newly discovered facts.
 "This claim is procedurally barred for each of the reasons stated above. Alternatively, this court notes that, even if this claim could be reviewed, it would not establish that his confessions were unreliable.
 "On May 1, 1992, Barbour gave two statements that were subsequently admitted at trial. An investigator with the Montgomery Fire Department took the first statement which was audiotaped. R. 278-283; C. Supp. 38-44 (a written transcript of the audiotaped statement). Later that day, Barbour gave a videotaped statement to members of the Montgomery Police Department. R. 284, 376-378; C. Supp. 45-76 (a written transcript of the videotaped statement). Both statements were highly incriminating.
 "As Judge Gordon[5] noted in the sentencing order,'[t]he evidence in this case was circumstantial, and the prosecution's case rested on Barbour's two voluntary confessions.' The Court of Criminal Appeals summarized the statements as follows:
 "`Barbour confessed and gave a detailed account of the facts surrounding Roberts's murder. Barbour told police that on March 20, 1992, he, Chris Hester, and Mike Mitchell went to see "Koon," who was a friend of Hester's *Page 866 
and who lived on Manley Drive in Montgomery. Hester talked with someone at the door and discovered that Koon was not home. The three then went across the street to the victim's house. Barbour stated that they entered the house, sat down in the living room and started drinking beer. Hester and the victim started talking. Later, the victim left the living room and went to the back of the house. A few minutes later, Hester also went to the back of the house. Hester and the victim remained there for several minutes while Mitchell and Barbour stayed in the living room. A short while later, Barbour and Mitchell heard loud noises coming from the back and went to investigate. They entered the bedroom and saw that the victim was naked and that Hester was wearing only his pants. Hester then hit the victim, and Barbour and Mitchell started hitting her about the head. The victim fell to the floor. Barbour and Mitchell got on either side of her and held her down while Hester had sex with her. After Hester got up and pulled on his pants, Barbour told the others that they could not leave because she could identify them. Barbour confessed that he then went to the kitchen, grabbed a knife, and returned to the bedroom. He got on his knees and forcibly stabbed the victim several times. He left the knife in her body, stood up, walked to the closet, threw some things from the closet around her body, and set them on fire. As they fled from the house, Barbour grabbed the smoke detector off the wall in the hallway and threw it in the living room.'
 "Barbour, 673 So.2d at 463. The information provided by Barbour in his statements was corroborated by the physical evidence presented at trial.
 "Granting Barbour's request for DNA testing for the purpose of proving that he did not rape the victim would be of no consequence. As noted previously, the State has never contended that Barbour raped the victim. Even though he was convicted of murder during rape in the first degree, the conviction stemmed from complicity in the victim's rape, not from Barbour[`s] physically raping the victim himself. R. 480-81 (trial judge instructing the jury that Barbour could be convicted for capital murder during rape if he acted in complicity with another who engaged in sexual intercourse with the victim). In his statement, Barbour said that he held the victim down while one of his partners in crime vaginally raped and possibly anally raped the victim. See Appendix D to State's Answer and Motion to Dismiss, at p. 52 (`Yeah, it, it's possible [that the victim was anally raped]. The way she was positioned, I would think so.') The evidence presented at trial corroborated Barbour's statement. R. 337 (testimony that spermatozoa was present on swabs taken from the victim's vagina and anus).
 "There is no need to allow DNA testing in this case because it would not establish Barbour's innocence. The State did not present evidence at trial that Barbour raped the victim. Barbour seems to vaguely suggest that his confession is `unreliable,' because everything stated therein is not factually correct. The Court, however, does not know of any case requiring that every aspect of a confession be factually correct before it is admissible. Barbour's claim, that his DNA should be tested to prove that he did not rape the victim, is, therefore, without merit."
(C. 633-38.)
The circuit court should not have concluded that Barbour's request for postconviction *Page 867 
DNA testing was procedurally barred by Rules 32.2(b) and 32.2(c), Ala.R.Crim.P.[6] Nevertheless, given the particular circumstances of this case, the circuit court correctly determined that Barbour was not entitled to such testing, based on his failure to demonstrate that the grounds for this claim are based upon "newly discovered facts," as defined in Rule 32.1(e), Ala.R.Crim.P. Rule 32.1, Ala.R.Crim.P., provides, in pertinent part:
 "Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
". . . .
 "(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
 "(1) The facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
 "(2) The facts are not merely cumulative to other facts that were known;
 "(3) The facts do not merely amount to impeachment evidence;
 "(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
 "(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received."
As the circuit court correctly noted, Barbour's conviction for the capital offense of murder committed during rape in the first degree rested on Barbour's participation in the rape as an accomplice, rather than the actual rapist. There was no evidence presented at trial pointing to Barbour as the person who raped Thelma Roberts. Instead, all of the evidence — including his own confessions — established that Barbour's participation in the rape was limited to holding Roberts on the floor while Hester raped her. Accordingly, there is no need for postconviction DNA testing in this case; such testing would have no relevance. Barbour now seeks to recant his previous confessions. However, because he is procedurally barred from collaterally attacking those confessions, Barbour's attempt to obtain DNA testing appears to be his rather ingenuous way of attempting to circumvent the procedural bar of Rules 32.2(a)(4) and 32.2(b), which would prohibit further review of the admissibility of his confessions. The purpose of DNA testing is to exonerate a wrongfully convicted defendant. It should not be used as a method to circumvent procedural bars whose purpose is to prohibit a petitioner from relitigating claims over and over again.
Our decision today does not stand for the proposition that guidelines for postconviction DNA testing should not be established. Such guidelines should, in fact, be *Page 868 
established in order to exonerate those who have been wrongfully convicted, particularly defendants in capital-murder cases in which the death penalty has been imposed. However, as Judge Shaw noted in his special concurrence in Dowdell v. State,854 So.2d at 1198-1203, the authority for establishing such guidelines lies with the Alabama Supreme Court, rather than with this Court.
Based on the foregoing, we conclude that the circuit court correctly denied Rule 32 relief based on this claim.
 III.
Barbour also argues that the circuit court erred in dismissing his claim that his conviction was obtained in violation of his constitutional rights. Barbour's argument is twofold. First, Barbour argues that his statement to the police was coerced. Second, he argues that in order to establish that his confession was coerced, he should be allowed to reopen his Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim and obtain discovery regarding alleged instances where the police abused other suspects in order to obtain confessions.
The circuit court found that Barbour's coerced-confession andBrady claims were precluded because they had been raised and addressed at trial and on direct appeal. Rules 32.2(a)(2) and (a)(4), Ala.R.Crim.P. The court quoted at length from this Court's discussion of Barbour's coerced-confession and Brady
claims on direct appeal. (C. 640-43, quoting Barbour v. State,673 So.2d at 465-67). The court determined that Barbour's Brady
claim was likewise precluded by Rule 32.2(b), because the same claims had been raised in his previous Rule 32 petition and rejected by the circuit court. The court specifically referenced that portion of the circuit court's 1998 order rejecting Barbour's Brady claim. (C. 644, referencing the 1998 findings at C. 428-31.) Additionally, the court determined that Barbour's claims failed to meet the newly discovered evidence standard set out in Rule 32.1(e), Ala.R.Crim.P., and that his grounds for relief consisted of nothing more than mere conclusory allegations. Finally, the court found that this claim was time-barred because it was filed beyond the applicable limitations period provided in Rule 32.2(c), Ala.R.Crim.P.
A Brady claim is subject to the procedural default grounds contained in Rule 32.2, Ala.R.Crim.P. See, e.g., Williams v.State, 782 So.2d 811, 818 (Ala.Crim.App. 2000). We note, however, that this does not prevent a petitioner from raising aBrady claim as part of a newly discovered evidence claim under Rule 32.1(e), Ala.R.Crim.P. See Giles v. State, [Ms. CR-00-0376, April 30, 2004] ___ So.2d ___, ___ n. 8 (Ala.Crim.App. 2004).
Here, the circuit court concluded that Barbour's newly discovered evidence in support of his Brady claim consisted of virtually the same evidence presented on two previous occasions. The court correctly concluded that because Barbour had failed to meet the requirements of Rule 32.1(e), Ala.R.Crim.P., to establish a claim based on newly discovered evidence, Barbour'sBrady claim was procedurally barred pursuant to Rule 32.2(a)(2) and (a)(4), because it was raised and addressed at trial and on appeal, and pursuant to Rule 32.2(b), because it was raised in his previous Rule 32 petition.
Moreover, the circuit court correctly found that Barbour's claim in this regard did not provide a "clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds," as required by Rule 32.6(b), Ala.R.Crim.P. As the court found, Barbour's claim consisted of "some conclusory allegations against Investigator *Page 869 
Davis and Detective Carmichael,"[7] and failed to "contend with any factual specificity how they allegedly physically abused him or how they physically abused other unnamed criminal defendants." Thus, the circuit court correctly ruled that the claim had not been sufficiently pleaded, as required by Rule 32.3 and 32.6(b), Ala.R.Crim.P. See Boyd v. State, [Ms. CR-02-0037, September 26, 2003] ___ So.2d ___, ___ (Ala.Crim.App. 2003). Accordingly, summary disposition of this claim was proper.
 IV.
Barbour argues that the circuit court erred in rejecting his claim that the United States Supreme Court's decision inApprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435 (2000), requires reconsideration of the sentencing procedure in his case. In Apprendi, the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The Supreme Court specifically excluded from its holding proof of prior convictions necessary to invoke a habitual felony offender act.530 U.S. at 490, 120 S.Ct. 2348. That court also excluded capital-sentencing schemes from its holding. 530 U.S. at 493,120 S.Ct. 2348.
Since the ruling in Apprendi, the Supreme Court has revisited this issue as it applied to capital-sentencing schemes. In Ringv. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556
(2002), the Supreme Court applied its earlier holding inApprendi v. New Jersey to death-penalty cases and held that "[c]apital defendants . . . are entitled to a jury determination on any fact on which the legislature conditions an increase in their maximum punishment." 536 U.S. at 589, 122 S.Ct. 2428. However, because the Apprendi and Ring decisions were decided after Barbour was convicted and sentenced to death, we must determine whether this new rule of law applies retroactively. InBoyd v. State, [Ms. CR-02-0037, September 26, 2003] ___ So.2d ___ (Ala.Crim.App. 2003), this Court rejected a claim that Ring
applied retroactively, holding:
 "In Ring, the Supreme Court overruled Walton v. Arizona, 497 U.S. 639[, 110 S.Ct. 3047, 111 L.Ed.2d 511] (1990), to the extent that it allowed the judge, not the jury, to find an aggravating circumstance that supported a death sentence and decided that its earlier holding in Apprendi v. New Jersey, 530 U.S. 466[, 120 S.Ct. 2348, 147 L.Ed.2d 435] (2000), applied to Arizona's death-penalty scheme. See Ring, 536 U.S. at 589[, 122 S.Ct. 2428] (`Capital defendants, no less than noncapital defendants, . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.'). Apprendi had announced the rule that `[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' Apprendi, 530 U.S. at 490[, 120 S.Ct. 2348] (emphasis added); see also Ring, 536 U.S. at 602[, 122 S.Ct. 2428].
 "Because Ring is merely an extension of Apprendi
to the context of death-penalty cases, see, e.g., Turner v. Crosby, 339 F.3d 1247, 1284 (11th Cir. 2003), a `Ring claim' is treated as a version of *Page 870 
an `Apprendi claim.' This court has recognized that Apprendi claims are nonjurisdictional, Poole v. State, 846 So.2d 370, 385-87 (Ala.Crim.App. 2001), and thus are subject to the general rules of preservation. See also Hale v. State, 848 So.2d 224, 232-33 (Ala. 2002). Boyd's Ring claim was not presented in the Rule 32 petition, so it is not properly before this court for review. See McGahee v. State, 885 So.2d 191, 228 n. 9 (Ala.Crim.App. 2003). See also, e.g., Arrington v. State, 716 So.2d 237, 239 (Ala.Crim.App. 1997).
 "We note that this court has held that Apprendi
claims are not applied retroactively to postconviction proceedings. Sanders v. State, 815 So.2d 590, 592 (Ala.Crim.App. 2001). Our retroactivity analysis of Apprendi applies equally to Ring. Accordingly, Ring claims are not applied retroactively to postconviction proceedings. Therefore, Boyd's suggestion that Ring applies retroactively to his death sentence is without merit."
(Footnote omitted.) Accord McWilliams v. State, 897 So.2d 437,457 (Ala.Crim.App. 2004).
Here, just as in Boyd, Barbour's contention that the rule inApprendi v. New Jersey — and by extension, the rule in Ring v.Arizona — apply retroactively to his death sentence is without merit. No basis for relief exists as to this claim.
 V.
Barbour next argues that the manner of execution used by the State of Alabama violates the Eighth Amendment's prohibition against cruel and unusual punishment.
We first note that this claim was raised in Barbour's initial Rule 32 petition. The circuit court rejected Barbour's claim, noting that it was procedurally barred pursuant to Rule 32.2(a)(3) and (a)(5), 32.2(b), and 32.2(c), Ala.R.Crim.P. (C. 465.) The circuit court's conclusion is correct. Because this claim was presented in Barbour's previous Rule 32 petition, it is barred as a successive claim. See Rule 32.2(b), Ala.R.Crim.P. We further note that the Court has rejected this argument on numerous occasions. See, e.g., Scott v. State, 728 So.2d 164,171 (Ala.Crim.App. 1997), aff'd, 728 So.2d 172 (Ala. 1998), cert. denied, 528 U.S. 831, 120 S.Ct. 87, 145 L.Ed.2d 74 (1999);Stephens v. State, 580 So.2d 11, 26 (Ala.Crim.App. 1990), aff'd, 580 So.2d 26 (Ala.), cert. denied, 502 U.S. 859,112 S.Ct. 176, 116 L.Ed.2d 138 (1991); and Thompson v. State,542 So.2d 1286 (Ala.Crim.App. 1988), aff'd, 542 So.2d 1300 (Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989). We further note the passage of Act No. 2002-492, Ala. Acts 2002, which provides for lethal injection as an alternate means of execution. Act No. 2002-492 became effective July 1, 2002. Based on the passage of this Act, Barbour's argument is effectively moot.
Based on the foregoing, the circuit court correctly denied relief based on this claim.
 VI.
Barbour also argues that "[g]iven the increasing complexity in capital post-conviction proceedings, the court below erred in rejecting [his] right to counsel claim in such proceedings." We note that Barbour did not raise this claim in his initial Rule 32 petition or in the subsequent amendments to that petition. Because this claim was not raised in Barbour's previous Rule 32 petition, the circuit court determined that the claim was barred as a successive petition, pursuant to Rule 32.2(b), Ala.R.Crim.P. Additionally, the court determined that Barbour's claim was time-barred, based on Rule 32.2(c), Ala.R.Crim.P.
Rule 32.2(b), Ala.R.Crim.P., before an amendment effective August 1, 2002, read, in pertinent part: *Page 871 
 "A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."
Barbour failed to allege in his petition that the grounds for this claim could not have been raised or ascertained through reasonable diligence when his first petition and the resulting amendments were filed. We note that while Barbour initially filed his petition pro se, it appears that it was prepared and sent to him for filing by an out-of-state attorney. (C. 555-61.) After the petition was filed, the circuit court appointed local counsel to represent Barbour. When local counsel withdrew, the court appointed new counsel to represent Barbour. In September 1997, counsel filed an amended petition and thereafter filed another amended petition. Barbour was also represented by counsel during the March 1998 evidentiary hearing on his petition. Although it is not clear from the record, it appears that at some point following the evidentiary hearing Barbour's appointed counsel withdrew, as well.
Rule 32.7(c), Ala.R.Crim.P., provides:
 "If the court does not summarily dismiss the petition, and if it appears that the petitioner is indigent or otherwise unable to obtain the assistance of counsel and desires the assistance of counsel, and it further appears that counsel is necessary to assert or protect the rights of the petitioner, the court shall appoint counsel."
Here, it appears that Barbour enjoyed the assistance of counsel during the pendency of his original Rule 32 petition. Given these circumstances, he has failed to establish why he was unable to raise a claim challenging the inadequacy of Alabama's system for appointing counsel to assist in pursuing postconviction relief at that time.
Further, Barbour cannot show that the failure to entertain this claim would result in a miscarriage of justice. TheSixth Amendment to the United States Constitution guarantees an accused the right to the assistance of counsel in criminal prosecutions; however, this right does not extend to postconviction proceedings because such proceedings are civil in nature. See Hamm v.State, [Ms. CR-99-0654, February 1, 2002] ___ So.2d ___, ___ (Ala.Crim.App. 2002); State v. Click, 768 So.2d 417, 419
(Ala.Crim.App. 1999); Mayes v. State, 563 So.2d 38, 39
(Ala.Crim.App. 1990). As the United States Supreme Court noted inPennsylvania v. Finley, 481 U.S. 551, 556-57, 107 S.Ct. 1990,95 L.Ed.2d 539 (1987):
 "Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. See Fay v. Noia, 372 U.S. 391, 423-424[, 83 S.Ct. 822, 9 L.Ed.2d 837] (1963). It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, cf. United States v. MacCollom, 426 U.S. 317, 323[, 96 S.Ct. 2086, 48 L.Ed.2d 666] (1976) (plurality opinion)."
Additionally, in Martinez v. Court of Appeal of California,528 U.S. 152, 160, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000), the Supreme Court recognized: "The Sixth Amendment does not include any right to appeal. As we have recognized, `[t]he right of appeal, as we presently know it in criminal cases, is purely a creature of statute.'" *Page 872 
(Quoting Abney v. United States, 431 U.S. 651, 656,97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).)
Because Barbour has failed to show that the court's refusal to entertain this claim resulted in a miscarriage of justice, the circuit court properly determined that this claim was procedurally barred pursuant to Rule 32.2(b), Ala.R.Crim.P.
 Conclusion
Based on our review of the record before us, as well as our review of the arguments of counsel and the relevant legal principles, we are convinced that the circuit court correctly denied Barbour's Rule 32 petition and that he is not entitled to relief on any of the claims raised in this appeal. Accordingly, the judgment of the circuit court is affirmed.
AFFIRMED.
McMILLAN, P.J., concurs. SHAW, J., concurs in the result. BASCHAB, J., dissents, with opinion. COBB, J., recuses herself.
[1] The amendment to Rule 39, Ala.R.App.P., effective May 19, 2000, as to death-penalty cases, changed the standard for certiorari review of a criminal case in which the death penalty is imposed. At the time Barbour filed his certiorari petition, Rule 39(c) provided that a petition for a writ of certiorari to the Supreme Court in a case in which the death penalty had been imposed would be granted as a matter of right.
[2] Judge William Gordon presided over Barbour's trial and reviewed his first Rule 32 petition. Upon Judge Gordon's retirement, Barbour's case was assigned to Judge Tracy McCooey.
[3] Rule 32.2, Ala.R.Crim.P., was amended, effective August 1, 2002, to clarify the procedural bars for postconviction relief.
[4] The limitations period in Rule 32.2(c) has been shortened to one year by an amendment effective August 1, 2002. See also explaining order of the Alabama Supreme Court issued January 27, 2004.
[5] See note 2.
[6] Although this Court has previously upheld the denial of Rule 32 relief based on a claim that a request for postconviction DNA testing was time-barred, see Dowdell v. State,854 So.2d 1195 (Ala.Crim.App. 2002), our decision was based on the petitioner's failure to seek relief for more than 10 years after Alabama law recognized the admissibility of DNA testing. By contrast, Barbour's claim is predicated not on the absence of DNA testing at trial (such testing was, in fact, performed), but that significant, recent technological developments would exonerate him. Accordingly, we cannot say that this claim was time-barred.
[7] During the investigation, Barbour was interviewed by Investigator William Davis of the Montgomery Fire Department and Detective Danny Carmichael of the Montgomery Police Department.