KELLUM, Judge.
Robert S. Lloyd appeals the circuit court’s summary dismissal of what he styled as a “Motion/Request for Forensic D.N.A. Testing.” (C. 7.)
*512 In December 2006, Lloyd was convicted of the first-degree rape and first-degree sodomy of P.P., who was 10 years old at the time of the crimes. The trial court sentenced Lloyd in January 2007 to 20 years’ imprisonment for each conviction, the sentences to run consecutively. This Court affirmed Lloyd’s convictions and sentences on appeal in an unpublished memorandum issued on December 14, 2007. Lloyd v. State, (No. CR-06-0985) 19 So.3d 261 (Ala.Crim.App.2007) (table).[1] This Court issued a certificate of judgment on January 3, 2008. In February 2008, Lloyd filed a Rule 32, Ala. R.Crim. P., petition challenging his convictions and sentences. The circuit coürt summarily dismissed the petition in May 2011, and this Court affirmed that dismissal in an unpublished memorandum issued on January 27, 2012. Lloyd v. State, (No. CR-10-1365, January 27, 2012) 130 So.3d 584 (Ala. Crim.App.2012) (table). This Court’s records also indicate that Lloyd filed a second Rule 32 petition in May 2010, while his first petition was still pending in the circuit court, and the circuit court also summarily dismissed that petition in May 2011. Lloyd did not appeal the dismissal of his second petition.
On May 9, 2012, Lloyd filed his motion for DNA testing. In his motion, Lloyd requested that the rape kit performed on P.P. be tested for DNA. He alleged that the rape kit was taken at the Stable Hospital in Greenville, that it was delivered to the Alabama Department of Forensic Sciences (“DFS”), and that DFS “would have records to verify that the ‘rape kit’ was delivered and the samples are still on file.” (C. 8.) Lloyd also alleged that the “main evidence” against him at trial was the testimony of P.P., whose testimony Lloyd described as “confused” and “false,” as well as “hearsay” testimony from three witness in whom P.P. had confided about the alleged rape and sodomy. (C. 8.) Lloyd also alleged in his motion that he never confessed to the crimes, that he was actually innocent of the crimes, that he had never provided a DNA sample for testing, and that the rape kit had never been tested for DNA.[2]
On June 20, 2012, the circuit court issued an order stating that it was going to treat Lloyd’s motion for DNA testing as a Rule 32 petition for postconviction relief and ordered the State to respond. On August 3, 2012, the State filed a response to Lloyd’s petition, arguing, among other things, that Lloyd’s request for DNA testing was precluded by Rule 32.2(b) and by Rule 32.2(c) because it failed to satisfy the requirements for newly discovered material facts in Rule 32.1(e). Specifically, the State argued that Lloyd knew, at the time of trial, that he had not provided a DNA sample for testing and he knew that the rape kit had not been presented as evidence against him.
On September 13, 2012, Lloyd filed what he styled as an “answer” to the State’s response, but which was really an objection to the circuit court’s June 20, 2012, order stating that it would treat his motion for DNA testing as a Rule 32 petition. Lloyd argued that it was error to treat his *513 motion as a Rule 32 petition because, he said, he had filed his motion pursuant to § 15-18-200, Ala.Code 1975, which, he claimed, “has been modified by the Alabama Supreme Court and is not limited to ‘DEATH ROW inmates.” (C. 66.) Lloyd relied on Searcy v. State, 77 So.3d 174 (Ala.Crim.App.2011), to support his argument.
On January 21, 2013, the State filed a response to Lloyd’s objection, arguing that § 15-18-200, Ala.Code 1975, applied only to defendants convicted of capital offenses, that Searcy, supra, did not modify § 15-18-200, and that the proper avenue for defendants convicted of noncapital offenses to request DNA testing in the postconviction context is to file a Rule 32 petition for postconviction relief.
On January 22, 2013, the circuit court issued an order setting out the procedural history of the case and then stating:
“Treating [Lloyd’s] Request as a Motion pursuant to Ala.Code § 15-18-200, the Court finds that [Lloyd] is not entitled to relief and the Motion is due to be DENIED.
“However, if [Lloyd] is pursuing his request as a Petition for Relief from Conviction or Sentence, this is a successive Petition and is precluded by Rule 32.2(b), Rule 32.2(a)(3), Rule 32.2(a)(5), Rule 32.2(c), and Rule 32.6(b), and is hereby DISMISSED.”
(C. 72-73. Capitalization in original.) This appeal followed.
I.
On appeal, Lloyd appears to argue, as he did in his objection to the circuit court’s June 20, 2012, order, that his request for DNA testing was a motion pursuant to § 15-18-200 and not a Rule 32 petition and that the circuit court erred in treating his motion as a Rule 32 petition, to the extent that it did so. We disagree.
Section 15-18-200(a) provides, in relevant part:
“An individual convicted of a capital offense who is serving a term of imprisonment or awaiting execution of a sentence of death, through written motion to the circuit court that entered the judgment of sentence, may apply for the performance of forensic deoxyribonu-cleic acid (DNA) testing on specific evidence, if that evidence was secured in relation to the investigation or prosecution that resulted in the conviction of the applicant, is still available for testing as of the date of the motion, forensic DNA testing was not performed on the case at the time of the initial trial, and the results of the forensic DNA testing, on its face, would demonstrate the convicted individual’s factual innocence of the offense convicted.”
(Emphasis added.) The plain language of § 15-18-200 expressly limits postconviction requests for DNA testing under that statute to those individuals convicted of capital offenses.
In his objection to the circuit court’s order stating that it would treat his motion as a Rule 32 petition, Lloyd relied on Searcy v. State, 77 So.3d 174 (Ala.Crim. App.2011), for the proposition that § 15-18-200 had been “modified” by the Alabama Supreme Court and was no longer limited to “death-row” inmates. According to Lloyd, Searcy was convicted of rape and sodomy and was serving a life sentence and was permitted to file a postconviction motion for DNA testing pursuant to § 15-18-200. However, Lloyd’s reliance on Se-arcy is misplaced. First, Searcy was an opinion from this Court, not from the Alabama Supreme Court as Lloyd alleged. Most importantly, however, Searcy “was convicted of capital murder for murdering Rory Lynn Kirkland during the course of *514 a burglary,” not of rape and sodomy as Lloyd argued. Searcy, 77 So.3d at 175. Therefore, this Court’s opinion in Searcy did not modify the plain language in § 15-18-200 limiting it solely to individuals convicted of a capital offense.
Lloyd, having been convicted of rape and sodomy and not of a capital offense, is clearly not within the category of individuals permitted to request DNA testing pursuant to § 15-18-200. Additionally, there is no specific statute providing an avenue for an individual convicted of a noncapital offense to seek DNA testing in the postconviction context. The State argued to the circuit court, and argues on appeal, that Rule 32 is the proper avenue for individuals convicted of non-capital offenses to seek DNA testing. We agree.
Before the enactment of § 15-18-200, this Court recognized that a postconviction request for DNA testing could be presented in a Rule 32 petition for postconviction relief. In Dowdell v. State, 854 So.2d 1195 (Ala.Crim.App.2002), Barry Dowdell filed a Rule 32 petition challenging his 1986 conviction for first-degree rape and his resulting sentence of 18 years’ imprisonment. In his petition, Dowdell asserted that he was entitled to relief from his conviction and sentence based on newly discovered material facts. See Rule 32.1(e). Specifically, Dowdell argued that DNA testing would establish that he was innocent of the rape, and he asserted that he had “only recently learned of this method of establishing his innocence.” Dowdell, 854 So.2d at 1197. On appeal from the circuit court’s summary dismissal of his petition, this Court held that Dowdell’s request for DNA testing was time-barred by Rule 32.2(c) because Alabama courts had recognized the admissibility of DNA evidence since 1991, when the Alabama Supreme Court issued its opinion in Ex parte Perry, 586 So.2d 242 (Ala.1991). Id. We also held that DNA evidence “was widely publicized during the 1990s” and, thus, that Dowdell’s assertion that he had only recently learned of DNA testing within six months of filing his June 2001 petition was not credible. Id. In doing so, however, this Court noted that “[h]ad Dowdell filed his petition within a reasonable time of the decision in Ex parte Perry, his claim that he had only recently learned about DNA testing would have been credible and we would have considered the merits of his petition alleging newly discovered evidence.” Id. at 1198.
In Barbour v. State, 903 So.2d 858 (Ala. Crim.App.2004), Christopher D. Barbour filed a successive Rule 32 petition attacking his convictions for three counts of capital murder — murder committed during the course of a rape, murder committed during the course of a burglary, and murder committed during the course of an arson — and his resulting sentence of death. Among the claims in his petition was a claim of newly discovered material facts under Rule 32.1(e) and a request for DNA testing of the biological evidence in the case based on “ ‘significant, recent technological developments.’” Barbour, 903 So.2d at 864. On appeal from the circuit court’s denial of Barbour’s petition, this Court first noted that because Barbour’s request for DNA testing was based on recent technological developments in DNA testing, his request was not precluded as successive under Rule 32.2(b) or time-barred by Rule 32.2(c), as was the case in Dowdell. However, this Court held that Barbour’s request for DNA testing failed to meet the materiality requirement of newly discovered material facts in Rule 32.1(e) because the evidence at trial established that Barbour was an accomplice in the rape, not the actual rapist, and that, therefore, “there is no need for postconviction DNA testing in *515 this ease; such testing would have no relevance.” Id. at 867.
Thus, in both Dowdell and Barbour, this Court recognized that a postconviction request for DNA testing could be made in a Rule 32 petition within the confínes of newly discovered material facts under Rule 32.1(e). Although § 15-18-200, enacted in 2009, clearly took postconviction requests for DNA testing for individuals convicted of capital offenses out of the realm of Rule 32, we do not believe that § 15-18-200 affected the ability of individuals convicted of noncapital offenses to seek DNA testing through Rule 32. Section 15-18-200 does not mention DNA testing for individuals convicted of noncap-ital offenses, and the plain language of the statute evidences no intent on the part of the Alabama Legislature to disturb existing law on the subject. As the United States Court of Appeals for the Eleventh Circuit has aptly explained:
“Because it applies only to capital defendants, Cunningham argues that the new statute [§ 15-18-200] constitutes a ‘deliberate policy choice’ by Alabama to deny evidence for DNA testing in non-capital eases such as his own. We are not persuaded. The statute does not address non-capital cases at all, and nothing in its language suggests any legislative intent to restrict or eliminate existing possibilities for non-capital defendants to seek discovery under Rule 32. The legislature might well have thought that death penalty cases had a more urgent claim on its attention and warranted more explicit and specific procedures, while leaving the procedure in non-capital cases to the courts to develop.”
Cunningham v. District Attorney’s Office for Escambia County, 592 F.3d 1237, 1267 (11th Cir.2010).[3]
Therefore, we hold that § 15-18-200 governs postconviction requests for DNA testing for those individuals convicted of capital offenses, while Rule 32 continues to govern postconviction requests for DNA testing for those individuals convicted of noncapital offenses. Accordingly, the circuit court here properly treated Lloyd’s postconviction request for DNA testing as a Rule 32 petition for postconviction relief.
II.
Lloyd also argues on appeal that the circuit court erred in denying his request for DNA testing of the rape kit performed on P.P. Lloyd contends that if the rape kit were tested for DNA, he would be exonerated of the rape and sodomy of P.P., and that the circuit court’s applying the preclu-sions in Rule 32.2 to his request for DNA testing resulted in a miscarriage of justice that requires reversal. We disagree.
As noted above, an individual convicted of a noncapital offense, like Lloyd, may make a postconviction request for DNA testing in a Rule 32 petition within *516 the confínes of newly discovered material facts under Rule 32.1(e). See Dowdell and Barbour, supra. Rule 32.1(e) provides:
“Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
“(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
“(1) The facts relied upon were not known by the petitioner or the petitioner’s counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
“(2) The facts are not merely cumulative to other facts that were known;
“(3) The facts do not merely amount to impeachment evidence;
“(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
“(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received.”
(Emphasis added.) All five requirements in Rule 32.1(e) must be satisfied in order to constitute newly discovered material facts, and, if all the requirements in Rule 32.1(e) are not satisfied, a claim of newly discovered material facts is subject to the preclusions in Rule 32.2. See McConico v. State, 84 So.3d 159, 161-62 (Ala.Crim.App. 2011), and McCartha v. State, 78 So.3d 1014, 1017-18 (Ala.Crim.App.2011) (both holding that a claim of newly discovered material facts that fails to satisfy the requirements of Rule 32.1(e) is subject to the preclusions in Rule 32.2).
The requirements in Rules 32.1(e)(1), (e)(2), and (e)(3) are self-explanatory. Rule 32.1(e)(5) requires not that the newly discovered facts actually establish a petitioner’s innocence but that the newly discovered facts “go to the issue of the defendant’s actual innocence,” i.e., are relevant to the issue of guilt or innocence, “as opposed to a procedural violation not directly bearing on guilt or innocence.” Ex parte Ward, 89 So.3d 720, 727 (Ala.2011). As for the requirement in Rule 32.1(e)(4) “that the result probably would have been different had the newly discovered evidence been presented to the jury, this calculation must be made based on the probative value of the newly discovered evidence and its relationship to the other evidence presented to the jury.” Id. at 728.
In this case, Lloyd’s request for DNA testing appears to satisfy the requirements in Rule 32.1(e)(2) through (e)(5). Lloyd alleged that no DNA testing was performed before trial; thus, the results of DNA testing would not be merely cumulative to other facts that were known, see Rule 32.1(e)(2), and would not merely amount to impeachment evidence, see Rule 32.1(e)(3). Lloyd also alleged that his convictions were based for the most part on the testimony of the victim and statements made by the victim to third parties, and that despite a rape kit being collected, no DNA testing was done to determine if his DNA was in the biological samples collected as part of the rape kit. Thus, the results of DNA testing, if those results revealed that Lloyd’s DNA did not match the DNA in the rape kit (if such DNA existed) as Lloyd argues they would, had they been known at the time of trial or of *517 sentencing, probably would have altered the outcome of his trial. See Rule 32.1(e)(4). Finally, the results of DNA testing would clearly be relevant as to Lloyd’s guilt or innocence. See Rule 32.1(e)(5).
Although Lloyd’s pleadings satisfy the last four requirements in Rule 32.1(e), they clearly fail to satisfy the first requirement. Lloyd did not allege in his petition that he was unaware of the existence of the rape kit performed on P.P. or that he could not have had the kit tested for DNA at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, Ala. R.Crim. P., or in time to be included in any previous collateral proceeding, and that he could not have discovered the existence of the rape kit or obtained DNA testing of the rape kit by any of those times through the exercise of reasonable diligence. See Rule 32.1(e)(1). Lloyd also did not allege in his petition that his request for DNA testing was based on new technological improvements in DNA testing that were not available at the time of his trial, at the time of his sentencing, at the time of any posttrial motion, or at the times he filed his previous Rule 32 petitions.
Because Lloyd’s request for DNA testing does not satisfy all five of the requirements in Rule 32.1(e), it is, as the circuit court found, subject to the preclusions in Rule 32.2. Based on our review of the record from Lloyd’s direct appeal, it is clear that Lloyd was well aware of the existence of the rape kit before his trial— the rape kit was specifically mentioned during a pretrial hearing. Therefore, Lloyd’s request is precluded by Rule 32.2(a)(3) and (a)(5) because it could have been, but was not, raised and addressed at trial and on appeal.
Moreover, because this is Lloyd’s third Rule 32 petition, his request is precluded by Rule 32.2(b) as successive. Although it is unclear from this Court’s records whether or not Lloyd requested DNA testing in his second petition,[4] under the circumstances in this case, that does not prohibit our application of Rule 32.2(b). If Lloyd did request DNA testing in his second petition, his current request is precluded under the provision in Rule 32.2(b) that “[t]he court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner.” If Lloyd did not request DNA testing in his second petition, then his current request is precluded under the provision in Rule 32.2(b) that “[a] successive petition on different grounds shall be denied unless” (1) the new grounds are jurisdictional or (2) the petitioner establishes that “good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.” A request for DNA testing as a newly-discovered-material-facts claim is not jurisdictional, and Lloyd failed to allege in his petition good cause for not making his request for DNA testing in either of his two previous petitions.
Finally, Rule 32.2(c) provides:
“Subject to the further provisions hereinafter set out in this section, the court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed: (1) In the *518 case of a conviction appealed to the Court of Criminal Appeals, within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala. RApp. P.; or (2) in the case of a conviction not appealed to the Court of Criminal Appeals, within one (1) year after the time for filing an appeal lapses; provided, however, that the time for filing a petition under Rule 32.1(f) to seek an out-of-time appeal from the dismissal or denial of a petition previously filed under any provision of Rule 32.1 shall be six (6) months from the date the petitioner discovers the dismissal or denial, irrespective of the one-year deadlines specified in the preceding subparts (1) and (2) of this sentence; and provided further that the immediately preceding proviso shall not extend either of those one-year deadlines as they may apply to the previously filed petition. The court shall not entertain a petition based on the grounds specified in Rule 32.1(e) unless the petition is filed within the applicable one-year period specified in the first sentence of this section, or -within six (6) months after the discovery of the newly discovered material facts, whichever is later; provided, however, that the one-year period during which a petition may be brought shall in no case be deemed to have begun to run before the effective date of the precursor of this rule, i.e., April 1,1987.”
Lloyd’s petition was filed over four years after this Court issued the certificate of judgment finalizing his convictions and, as noted above, it is clear that Lloyd was aware of the existence of the rape kit before his trial began. Therefore, his request for DNA testing was also clearly time-barred by Rule 32.2(c).[5]
Rule 32.7(d), Ala. R.Crim. P., authorizes the circuit court to summarily dismiss a petitioner’s Rule 32 petition
“[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings ...”
See also Hannon v. State, 861 So.2d 426, 427 (Ala.Crim.App.2003); Cogman v. State, 852 So.2d 191, 193 (Ala.Crim.App.2002); Tatum, v. State, 607 So.2d 383, 384 (Ala. Crim.App.1992). Because Lloyd’s request for DNA testing was clearly precluded, the circuit court’s summary dismissal of Lloyd’s Rule 32 petition was appropriate.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. This Court may take judicial notice of its own records, and we do so in this case. See Nettles v. State, 731 So.2d 626, 629 (Ala.Crim. App.1998), and Hull v. State, 607 So.2d 369, 371 n. 1 (Ala.Crim.App.1992).

. Lloyd also made arguments in his motion about his "mental illness” and alleged that "perjured testimony” had been used at his trial. (C. 7.) However, it does not appear that Lloyd intended these arguments to be separate claims for relief and, in any event, Lloyd does not pursue them on appeal. See, e.g., Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim. App.1995) ("We will not review issues not listed and argued in brief.”).

. In Cunningham, the Eleventh Circuit Court of Appeals considered whether Alabama’s postconviction procedures for seeking DNA testing were "constitutionally adequate to secure any limited liberty interest [convicted defendants] may have in seeking DNA evidence that might prove [their] innocence" in accordance with the United States Supreme Court’s opinion in District Attorney’s Office for the Third Judicial District v. Osborne, 557 U.S. 52, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009). 592 F.3d at 1263. Because § 15-18-200 provides an avenue for individuals convicted of capital offenses to seek DNA testing in the postconviction context and because Rule 32 provides an avenue for individuals convicted of noncapital offenses to seek DNA testing in the postconviction context (specifically pursuant to Rule 32.1(e) and postconviction discovery under Ex parte Land, 775 So.2d 847 (Ala. 2000)), the Court concluded, Alabama's procedures were adequate and in compliance with Osborne.

. This Court’s records reflect that Lloyd did not make any request for DNA testing in his first petition.

. Lloyd did not assert equitable tolling in his petition. See, e.g., Ex parte Ward, 46 So.3d 888, 897-98 (Ala.2007) (”[W]hen a Rule 32 petition is time-barred on its face, the petition must establish entitlement to the remedy afforded by the doctrine of equitable tolling. A petition that does not assert equitable tolling, or that asserts it but fails to state any principle of law or any fact that would entitle the petitioner to the equitable tolling of the applicable limitations provision, may be summarily dismissed without a hearing.”).